FILED - GR
April 8, 2016 3:20 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: mkc   SCANNED BY: /s/

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

PAUL NATHAN DEWEESE, M.D.,

    Defendant.
_____/

1:16-cr-76
Robert J. Jonker
Chief U.S. District Judge

**FELONY INFORMATION**

The United States Attorney charges:

**False Statements Relating to Health Care Matters**

1. Beginning in or around April 9, 2012, and continuing until at least March 28, 2014, in the Western District of Michigan and elsewhere, the defendant,

**PAUL NATHAN DEWEESE, M.D.,**

in a matter involving a health care benefit program as defined in 18 U.S.C. § 24(b), did knowingly and willfully make and use—and knowingly and willfully cause others to make and use—materially false writings and documents, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services.

**BACKGROUND**

2. Paul N. DeWeese, M.D., P.L.C. was a professional liability company formed in 2005. At all times relevant to this Information, Paul N. DeWeese, M.D., P.L.C., operated under various names, including, as is relevant to this Information, NBO Medical. At all times relevant to this Information, Paul N. DeWeese, M.D., P.L.C., maintained a registered address of 3410 Belle Chase Way, Lansing, Michigan 48911.

3.     According to records from the Michigan Department of Licensing and Regulatory Affairs, the Defendant was the sole member and manager of Paul N. DeWeese, M.D., P.L.C. The Defendant also identified himself as the President and Chief Executive Officer of Paul N. DeWeese, M.D., P.L.C. d/b/a NBO Medical (hereafter identified as "NBO Medical").

### Blue Cross Blue Shield of Michigan

4.     At all times relevant to this Information, Blue Cross Blue Shield of Michigan ("BCBSM") was a private health care corporation and a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

5.     Providers participate in the BCBSM program by contracting with BCBSM. Providers agree to abide by the terms and conditions of their enrollment contract and any and all applicable BCBSM policies or coverage determinations in submitting claims for reimbursement to BCBSM.  In order to be paid for services rendered to BCBSM beneficiaries, providers must provide a diagnostic code and a procedure code (so-called Current Procedural Terminology ("CPT") codes) on claim forms that are submitted, in paper form or electronically, to BCBSM. Payments are made based upon the provider's compliance with its BCBSM enrollment contract and any applicable BCBSM policies or coverage determinations, as well as the specific diagnostic and procedure codes listed on the BCBSM claim forms.

6.     Each provider who contracts with BCBSM is assigned a unique personal identification number (a "PIN"), which must be used in submitting claims.  BCBSM makes payments to participating providers by sending checks through the United States mail or electronically depositing reimbursements into providers' bank accounts.

7.     At all times relevant to this Information, NBO Medical was enrolled with

2

BCBSM as a group provider. NBO Medical was assigned two group PINs.

8. At all times relevant to this Information, the Defendant was enrolled as a provider with BCBSM. The Defendant was assigned a PIN.

9. At all times relevant to this Information, NBO Medical submitted claims to BCBSM through third-party billing companies.

### Billing BCBSM For Nerve Block Injections Performed By Nurse Practitioners

10. At all times relevant to this Information, BCBSM maintained a policy that certain nerve block injections ("nerve blocks") performed by nurse practitioners—including axillary nerve blocks (CPT 64417), sciatic nerve blocks (CPT 64445), femoral nerve blocks (CPT 64447), and peripheral nerve blocks (CPT 64450)—were not payable to nurse practitioners.

11. While reimbursements for nerve block injections were not payable to nurse practitioners under BCBSM policy, such reimbursements were payable to supervising or collaborating physicians who satisfied BCBSM's so-called "indirect billing" requirements. A supervising or collaborating physician could bill—and be paid for—a nerve block injection performed by a nurse practitioner if, among other things, the nurse practitioner "presented pertinent clinical findings and obtained approval of evaluation and management by the physician prior to the end of the day following the service." BCBSM made clear that "[s]pecific clinical direction does not include the application of general protocols or care pathways." BCBSM also required that "[t]he involvement of the collaborative physician establishing the basis for indirect billing must be documented in the medical record."

### Nerve Block Injections Performed At NBO Medical

12. At all times relevant to this Information, NBO Medical operated medical clinics

3

in Brighton, Michigan, Flint, Michigan, Grand Rapids, Michigan, and Lansing, Michigan. The NBO Medical clinics in Flint and Grand Rapids were primarily staffed by nurse practitioners, without any constant or regular physician presence.

13.  NBO Medical routinely administered a procedure known as a Combined Electrochemical Block ("CEB") to patients insured by BCBSM. The CEB procedure involved a combination of nerve block injections and electrical stimulation treatments. At various times relevant to this Information, the CEB procedure involved the administration of peripheral, sciatic, femoral, and/or axillary nerve block injections.

14.  Starting in or around January 2012, NBO Medical began using electronic medical records through a third-party vendor, Workflow.com LLC ("Workflow"). The Workflow software suite not only had an electronic medical records component, but also offered a secure messaging system that allowed practitioners and office staff to document, track, and respond to clinical questions and other internal communications. The Workflow software suite also offered a web-based architecture that allowed for secure, web-based access to electronic medical records and internal communications from any location. The Workflow software suite also allowed practitioners to store an electronic facsimile of their hand-written signatures to place in medical records, as necessary.

15.  NBO Medical submitted claims to BCBSM for nerve block injections performed by nurse practitioners. At various times relevant to this Information, NBO Medical submitted such claims using procedure codes CPT 64417 (axillary nerve blocks), 64445 (sciatic nerve blocks), 64447 (femoral nerve blocks), and 64450 (peripheral nerve blocks).

16.     On or about April 17, 2012, the Defendant, acting in his capacity as the President and Chief Executive Officer of NBO Medical, hand-signed an NBO Medical protocol entitled, "NP/PA BCBS Indirect Billing Requirements." In that protocol, the Defendant, acknowledged, in relevant part, that:

> **No Blue Cross Blue Shield of Michigan (BCBSM) Groups** accept direct billing from nurse practitioners or physician assistants (NP/PA). For NTC [NBO Medical] to be paid by these groups, we must do so through in-direct billing. In other words, the NP/PA must bill under Dr. DeWeese. In order for the claim to be accepted for indirect billing, the following procedure must be adhered to.
>
> **Procedure**
> If the patient has BCBSM coverage, the billing for the service must be *indirect*. To qualify for indirect billing, the NP/PA must contact Dr[.] DeWeese *after* seeing the patient(s) to review the case(s) with him. Unless the NP/PA will be seeing more than one of these patients in a day, this contact should be made with Dr[.] DeWeese at the conclusion of the patient visit. If there is more than one BCBSM patient scheduled that day, the contact with Dr[.] DeWeese can be made after seeing all patients that day.
>
> The preferred method of contact with Dr[.] DeWeese is through WorkFlow messaging. Once Dr DeWeese responds, the NP/PA must mark the patient chart: "Case discussed with Dr DeWeese." THE CONTACT and DR[.] DEWEESE RESPONSE MUST BE DONE THE SAME BUSINESS DAY AS THE PATIENT VISIT TO QUALIFY for in-direct billing.

17.     To document the Defendant's review of nerve blocks performed by nurse practitioners, as required by BCBSM policy and NBO Medical's internal protocol, nurse practitioners sent the Defendant a copy of the pertinent patient progress note through Workflow's secure messaging system. In response, nurse practitioners received a copy of the same progress note that bore the Defendant's electronic signature. This electronic signature was used as the basis for billing BCBSM, under the Defendant's name and PIN, for nerve blocks performed by nurse practitioners.

18.     During the relevant time period, the Defendant failed to review progress notes for

5

nerve blocks performed by nurse practitioners at the NBO Medical clinics in Flint and Grand Rapids. The Defendant instead gave his Workflow login information (*i.e.*, his username and password) to other individuals and directed those individuals to place the Defendant's stored electronic signature on patients' progress notes, thereby falsely denoting that the Defendant reviewed the progress notes in satisfaction of BCBSM's "indirect billing" requirements.

19.  NBO Medical sent these materially false progress notes to its third-party billing companies. NBO Medical's third-party billing companies used the false documents to generate and submit claims to BCBSM for these nerve blocks, identifying the Defendant as the rendering provider and thus falsely representing that the claims were eligible for reimbursement under BCBSM's "indirect billing" requirements. BCBSM paid $172,991.56 for these nerve blocks. For example:

  a. On or about July 24, 2012, an individual, acting at the Defendant's direction, electronically signed the Defendant's name on a progress note for a patient, R.G. The progress note related to, among other things, nerve block injections performed by a nurse practitioner on or about April 20, 2012. BCBSM paid for these nerve block injections.

  b. On or about July 25, 2012, an individual, acting at the Defendant's direction, electronically signed the Defendant's name on a progress note for a patient, D.H. The progress note related to, among other things, nerve block injections performed by a nurse practitioner on or about April 16, 2012. BCBSM paid for these nerve block injections.

  c. On or about July 25, 2012, an individual, acting at the Defendant's direction, electronically signed the Defendant's name on a progress note for a patient, D.H. The progress note related to, among other things, nerve block injections performed by a nurse practitioner on or about April 23, 2012. BCBSM paid for these nerve block injections.

  d. On or about September 19, 2013, an individual, acting at the Defendant's direction, electronically signed the Defendant's name on a progress note for a patient, R.C. The progress note related to, among other things, nerve block injections performed by a nurse practitioner on or about September 19,

2013. The metadata associated with this electronic signature indicates that the signature originated from a computer that was not associated with the Defendant, NBO Medical, or any employee of the Defendant or NBO Medical. BCBSM paid for these nerve block injections.

**18 U.S.C. § 1035(a)(2)**
**18 U.S.C. § 2(b)**

Dated: April 8, 2016                           PATRICK A. MILES, JR.
                                               United States Attorney

                                               _____/s/ Adam B. Townshend_____
                                               ADAM B. TOWNSHEND
                                               RAYMOND E. BECKERING III
                                               Assistant U.S. Attorneys